**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

UNITED STATES OF AMERICA

v.                                                              CRIMINAL  ACTION  NO. 3:09-00158-03

JASON P. BELCHER
        also known as "Biz"

**MEMORANDUM OPINION AND ORDER**

Pending is the defendant's motion, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, for a new trial (Doc. 362).  For the reasons explained below, the Court **DENIES** the motion.

**Background**

On June 23, 2009, a federal grand jury returned a ten count indictment against the defendant, Jason Belcher, and five alleged co-conspirators.  The defendant was included in Count One – conspiracy to distribute 50 grams or more of cocaine base and a quantity of heroin – and Count Four – distribution of 5 grams or more of cocaine base.  According to the indictment, the actions connected with each count occurred at or near Huntington, West Virginia, within the Southern District of West Virginia.  The indictment specified that the conspiracy took place from "on or about" October 2008 to on or about June 4, 2009.

On March 19, 2010, after a four day trial, a federal jury returned a verdict of guilty against the defendant – convicting him of both counts for which he had been indicted.  The defendant now raises five grounds for error, which he contends warrant the issuance of a new trial: first, that the Court erred in permitting the government's preemptory challenge to a minority juror – an Asian-

American named Ms. Baisas Diaz; second, that the Court erred when it did not dismiss juror Neville

for cause, based on her statements regarding the weight she would afford to a law enforcement

officer's testimony; third, that the Court erred by not declaring a mistrial as a result of the

government's failure to provide the defendant with DEA Agent Wren Ray's handwritten notes taken

during the interview of government witness Stephen Hester; fourth, that the Court should order a

new trial as the result of the government's violation of the Court's order prohibiting it from

presenting evidence with regard to the Defendant's prior conviction; fifth and finally, that the Court

erred when it permitted the government to argue, in closing, that the jury could rely on fifty-one and

one-half grams of cocaine base seized during the June 24, 2009 arrest of Defendant Belcher to

establish the drug weight included in the indictment under Count One.  The Court will address each

of these asserted errors in turn.


**I.      The Court Did Not Err In Denying the Batson Challenge to Ms. Baisas-Diaz**

Of thirty-eight potential jurors on the venire panel, there was only one Asian-American – Ms.

Baisas Diaz.  Ms. Baisas-Diaz responded to two questions during the Court's voir dire.  First, she

expressed concerns about taking off work to serve because she was the only assistant in her

husband's medical practice.  She also responded when asked if she or any members of her family

worked in a profession dealing with the administration of drugs, drug counseling, or drug therapy.

The following dialogue ensued:

> JUROR BAISAS-DIAZ: I work in a psychiatrist's office.
>
> THE COURT: Who do you work for?
>
> JUROR BAISAS-DIAZ: Dr. Diaz.

> THE COURT: All right. And he prescribes controlled substances?
>
> JUROR BAISAS-DIAZ: When we have patients who are – have problems about drugs and things like those. . . .
>
> THE COURT: All right. Do you actually participate in providing any of the treatment?
>
> JUROR BAISAS-DIAZ: No, except calling in medications to people that are prescribed medication.
>
> THE COURT: All right. Are you mostly handling the office work?
>
> JUROR BAISAS-DIAZ: Yes, and call the drugstore.
>
> THE COURT: All right. You call in the prescriptions?
>
> JUROR BAISAS-DIAZ: The prescriptions for patients.
>
> THE COURT: All right. Thank you, ma'am.

(Tr. of Voir Dire, Doc. 355 at 35-36).

Neither the prosecution or the defense requested to ask follow-up questions to Ms. Baisas-Diaz. The government then chose to exclude her with one of its preemptory strikes. Defendant Belcher raised a *Batson* challenge, and the Court entertained argument.

> MR. COLLIAS: She's obviously of a minority group that has historically been discriminated against, and I would call upon the Government to articulate race-neutral reasons for that because I think the pattern has been historically striking minority jurors, and so I make that challenge.
>
> THE COURT: Okay.

>MR. ADAMS: Judge, she indicated in questioning that she works with drug abusers. She indicated that she calls in prescriptions of drugs, so she's got experience around drugs, and we think that could affect her. It has nothing to do with race.
>
>. . . .
>
>THE COURT: Well, the Government has articulated, I think, a neutral, plausible reason for striking her. She did indicate that her husband is a psychiatrist or psychologist, that as a result she literally is involved in prescribing drugs. And I think she described that she also -- the office also provides treatment for patients who might be involved with drug abuse. It's certainly plausible that the Government could feel that she's sympathetic to people who are drug users or abusers. They don't have to show more than that.
>
>MR. COLLIAS: Just show our objection and exception to the Court's ruling. I mean we believe that it's a pretext to strike -- it's profiling, not done because of any personal animosity towards this woman, but as profiling because of her ethnic background, and we don't think that the Government has articulated a reason.

(Tr. of Voir Dire, Doc. 355 at 133-34).

While both all parties in litigation are typically given broad discretion in exercising preemptory strikes, "a State may not exercise its challenges in contravention of the Equal Protection Clause." *Batson v. Kentucky*, 476 U.S. 79, 91 (1986). A defendant perceiving such a violation of equal protection may challenge the prosecutors exercise of the strike, by raising a *Batson* challenge. A *Batson* challenge consists of three steps, with the burden shifting from defense, to prosecution, then back to the defense. *See United States v. Farrior*, 535 F.3d 210, 220-21 (2008). First, the defendant must make a *"prima facie* showing of purposeful discrimination." *Id.* at 220. In the second step, the burden shifts to the prosecution "to articulate a race-neutral explanation" for the

strike.  *Id.*  at 221.  In the third, and final step, the burden shifts back to the defendant "to prove that the explanation given is a pretext for discrimination." *Id.*  The ultimate burden always rests with the defendant making the *Batson* challenge.  *Id.*

In asserting his *Batson* challenge at trial, the defendant relied upon Ms. Baisas-Diaz's status as a minority and the Government's "pattern" of "historically striking minority jurors." The Court is not aware, and the defendant did not provide evidence of such historical practice; it is arguable, therefore, that the defendant never met his burden of asserting a *prima facie* showing of purposeful discrimination.  This burden is not met simply because the government has asserted a preemptory strike against a member of a minority.  *See id.* at 221 (citing *United States v. Malindez*, 962 F.2d 332, 334 (1992)).  Nonetheless, the Court called upon the government to give a race-neutral explanation.  The government met its burden in the second step, by explaining its concern about the fact she worked with drug abusers, called in prescriptions, and therefore had experience with drugs.  During trial the defendant offered no evidence of pretext, but simply stated his opinion that the government had not asserted a reason.  The Court then accepted the government's proffered explanation.

The defendant now offers additional argument and evidence that the prosecution's proffered non-discriminatory reason for striking Ms. Baisas-Diaz was pretextual.  He contends that it is illogical – as Ms. Baisas-Diaz's involvement prescribing drugs would likely make her biased against someone who traffics drugs illegally – and that the government did not move to strike two similarly-situation, non-minority jurors.

The defendant's first argument ignores her other responses, which explain that her husband's practice involves counseling and treating drug abusers.  As the Court stated on record, this could

-5-

reasonably be expected to cause her to be more sympathetic to drug abusers than the average juror. This is an entirely logical and non-pretextual reason to exercise a preemptory strike.

The defendant's argument regarding similarly situated jurors is based on the responses of Jurors Hull and Valentine.  Hull is an assistant superintendent in the public school system and indicated that "[e]xpulsion of students with drug possession is handled in my officer.  Counseling and alternative education programs for students that are offenders are handled in my office."  (Tr of Voir Dire, Doc. 355 at 35-36).  Ms. Valentine indicated that she has a daughter who is a pharmacy technician.

The Court does not find these jurors to be similarly situated, and the fact the government did not seek to strike them is not evidence of pretext.  Importantly, neither of them personally plays a role in obtaining prescription drugs for patients – as does Ms. Baisas Diaz.  Additionally, Ms. Baisas-Diaz is the only support staff in an office which counsels and treats drug abusers.  Ms. Valentine has no such similar role.  While Mr. Hull works in an office that deals with counseling of high school drug offenders, his office also plays a disciplinary role.  He could reasonably be perceived as having a more balanced view of drug offenders.  Because neither of the jurors purported to be similarly situated are readily comparable to Ms. Baisas-Diaz, the defendant has offered no reasonable basis for finding pretext in the government's non-discriminatory rationale for striking her.  The Court **FINDS** that its denial of a *Batson* challenge is not grounds for error.

## II.     The Court Did Not Err in Refusing to Strike Juror Neville For Cause

The Court questioned juror Neville individually during voir dire.  During that questioning the following colloquy took place.

THE COURT: Do you believe that the testimony of a law enforcement officer should be given more weight than the testimony of other witnesses just because that person is a law enforcement officer?

JUROR NEVILLE: I think I would have more of a -- I would believe -- more of a tendency to believe him stronger.

THE COURT: Why is that?

JUROR NEVILLE: Because he is a sworn person, that's the life that he lives of obeying the law.

THE COURT: Do you think that police officers always tell the truth and are always correct in what they observe?

JUROR NEVILLE: I was brought up to believe that, but as an adult it's proved not to always be so. So that would be my answer.

THE COURT: All right. So there are occasions when you think police officers may testify wrongly, whether it's because they're not telling the truth or simply mistaken in what they do.

JUROR NEVILLE: Mistaken, yes, sir.

THE COURT: All right. And do you believe it's possible that they could also lie?

JUROR NEVILLE: Yes.

THE COURT: If a police officer testified to observing something, some event, and other witnesses testified contradictory to that, that they saw the event a different way and you thought they were honest people in a position to see something, would you assume that the officer is correct just because it's a police officer?

JUROR NEVILLE: No.

-7-

> THE COURT: What would you do in a case like that? How would you decide who to -- which version to choose?
>
> JUROR NEVILLE: I would consider that as being the reasonable doubt.

(Tr. of Voir Dire, Doc. 355 at 116-17)

After the Court concluded, the defendant requested follow-up questions.  He had the following

conversation with juror Neville.

> MR. COLLIAS: Would it be fair to say, though, as a general proposition that you're more -- you tend to believe what police officers say?
>
> JUROR NEVILLE: Yes.
>
> MR. COLLIAS: Okay. Okay. But you recognize that police officers could lie.
>
> JUROR NEVILLE: It's possible.
>
> MR. COLLIAS: Okay. But as compared to just the average witness, you would tend to give more weight to a police officer's testimony.
>
> JUROR NEVILLE: Yes.

(Tr. of Voir Dire, Doc. 355 at 117-18).  After this follow-up the defendant motioned to dismiss juror

Neville for cause.  The Court denied the motion.

The Sixth Amendment entitles a defendant to "trial by a jury composed of those who will

adhere to the law and fairly judge the evidence."  *United States v. Smith*, 451 F.3d 209 (4th Cir.

2006). If bias is shown a potential juror must be excused for cause.  *United States v. Turner*, 389

F.3d 111, 117 (4th Cir. 2004).  The burden of proving partiality, however, is on the challenger.  *Id.*

at 117-18.  The ultimate test is whether the juror can be impartial and follow the law; this

determination is "essentially one of credibility, and therefore largely one of demeanor." *Patton v. Yount*, 467 U.S 1025, 1038 (1984).

Based on the entirety of juror Neville's answers and her demeanor while answering them, the Court concluded that she would have the ability to be fair and impartial. Reviewing the answers in retrospect, the Court stands by its initial decision. Although juror Neville initially expressed what would fairly be described as a tendency to believe police officers over other witnesses, she also acknowledged that police officers could be mistaken and even lie. Importantly, she stated, without any prompting, that she would find a discrepancy between an officer's statement and other witnesses she believed to be honest to be cause for reasonable doubt. This answer illustrates her ability to be fair and impartial in spite of her stated inclination to trust a police officer. Because of this the Court **FINDS** that it was not an error to deny the defendant's motion to strike juror Neville for cause.

**III.     The Court Did Not Err When It Refused to Grant a Mistrial After Finding that the Government Had Not Disclosed Certain of Agent Wren Ray's Handwritten Notes**

The defendant argues that he should be granted a mistrial because the government did not turn over handwritten notes of DEA Agent Wren Ray prior to trial. The missing notes were taken by Agent Ray during an interview of Steven Hester, one of the government's witnesses and also one of the defendant's alleged co-conspirators. During this interview Hester stated that he was not involved in the distribution of heroin and "wasn't really" involved with Jason Belcher. In a later interview he changed his story and admitted his participation in a drug distribution ring, which included distribution of heroin and constituted a conspiracy involving Jason Belcher. In a letter dated March 9, 2010, the government informed the defendant of Hester's initial denial of

involvement with either Belcher or the conspiracy. The defendant inquired as to whether there were any written statements of Hester or interview notes, the government replied that there were none.

At trial, during the cross-examination of Hester, the witness testified that Agent Ray was taking notes during the interview where he made his denial. At that point the Court held a bench conference and inquired whether there were, in fact, notes of the interview. The government acknowledged that Agent Ray had written some calculations and figures during the interview but denied that they qualified as notes which it was required to disclose. The Court ordered that these notes be produced. The Court gave the defendant an opportunity to review the notes and then held a hearing on their non-production. Because there was no showing of prejudice, the Court denied the defendant's motion for a mistrial.

The defendant argues that the initial non-disclosure of these notes is a violation of the Jencks Act – 18 U.S.C. § 3500, *Brady v. Maryland,* 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). The government contends that these notes do not qualify as material which must be disclosed under any of these authorities.

Whether or not the government's failure to disclose the handwritten notes of Agent Ray was improper, the defendant has not identified any prejudice as a result of this non-disclosure. While the government did not produce the actual notes of Agent Ray until after the trial had commenced, the defendant had knowledge of the potentially exculpatory statements of Stephen Hester well before trial. The defendant was also permitted time to review the notes prior to the Court's hearing. The defendant did not identify any useful or exculpatory information within the notes at that time and has failed to identify any such information since. For these reasons, the Court **FINDS** that it was

not in error when it denied the defendant's motion for mistrial based on the government's failure to

disclose Agent Ray's notes.

**IV.     There Is No Need to Grant A New Trial Based upon a Government Witness's Testimony Revealing the Defendant's Prior Incarceration**

Prior to trial the government filed notice that it intended to offer evidence that the defendant

had a prior felony conviction for possession of crack cocaine in the state court of Ohio. The

defendant filed a motion *in limine* to exclude such evidence, which the Court granted on March 15,

2010.   *See* Doc. 313.   The Court held that any probative value of such evidence would be

substantially outweighed by the danger of unfair prejudice.

During trial, the government called Britton Fiske, an alleged co-conspirator, as a witness.

Fiske testified that he met defendant Belcher in a state prison in Ohio.  The defendant cross-

examined Fiske about their time in prison, particularly about a separation order entered to keep them

apart, and Belcher later took the stand himself and testified not only about his time in prison with

Fiske but also admitted his prior conviction.  While the defendant did not object to Fiske's testimony

at trial, he now contends that this was a violation of the Court's prior Order to exclude evidence of

the defendant's prior conviction.

The government contends that it instructed all witnesses not to mention their knowledge of

the defendant's prior incarceration. It also states that the defendant agreed not to object to testimony

from Mr. Fiske that he and the defendant met while in prison.  The government argues that it

discussed Fiske's testimony with the defendant prior to the time Fiske took the stand and that the

defendant stated his intention of cross-examining Fiske about the separation order.  While Fiske was

on the stand the government was careful not to elicit testimony about the nature of Belcher's prior

conviction or any information about why the defendant had been incarcerated.

By asserting that the government violated one of this Court's pretrial orders, defendant

Belcher is alleging prosecutorial conduct.  Such misconduct will result in a mistrial only if it "so

infected the trial with unfairness as to make the resulting conviction a denial of due process."

*United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002).  "The test for reversible prosecutorial

misconduct has two components: first, the defendant must show that the prosecutor's remarks or

conduct were improper and, second, the defendant must show that such remarks or conduct

prejudicially affected his substantial rights so as to deprive him of a fair trial."  *Id.*  The defendant's

claim fails on the second portion of this test.[1]  Even ignoring the government's legitimate reason for

allowing its witness to testify about Belcher's prior incarceration, the Court **FINDS** that any

misconduct did not result in unfairness amounting to a denial of due process.


**V.     The Court Did Not Err in Overruling the Defendant's Objection to the Government's
         Reference to Crack Cocaine Seized from the Defendant on June 24, 2009 During
         Closing Argument**

Prior to trial, the defendant motioned the Court to preclude evidence from his June 24, 2009

arrest because it was outside the time of the conspiracy, alleged in the indictment to have taken place

between October 2008 and June 4, 2009.  The Court issued an Order allowing in the disputed

evidence and explaining,

> The drug related activity of Defendant Belcher
> occurring   outside   the   conspiracy   time-frame

---

[1]The Court does not find that the prosecutors conduct was improper, but simply assumes as
much for the purpose of analysis.

> identified in the indictment is nonetheless intrinsic to
> the crime charged and therefore admissible . . .  It
> grew out of the conspiracy and is both "inextricably
> intertwined" with acts of the conspiracy and part of
> the same "single criminal episode."

Order of March 15, 2010 (Doc. 313); *See also, United States v. Chin*, 83 F.3d 83 (4th Cir. 1996)

("Other criminal acts are intrinsic [and thus admissible] when they are inextricably intertwined . .

. or part of a single criminal episode. . . .) (internal citations omitted).

During its closing argument, the government referred to fifty-one and one-half grams of

crack cocaine seized from the defendant on June 24, 2009.  The government informed the jury that

they could consider this drug amount in determining whether the defendant had engaged in a

conspiracy to distribute fifty grams or more of crack cocaine, as alleged in the indictment.  The

defendant made an objection, which the Court denied.  The defendant now reasserts the issue as an

error justifying a new trial.

The Court **FINDS** that this issue has been mooted by the Court's Order of April 13, 2010,

which granted the defendant's motion for a pre-sentence determination that the statutory range of

conviction for Count One be based upon an undefined quantity of heroin, rather than 50 grams or

more of cocaine base.  The jury returned only a general verdict form on Count one, which charged

the defendant and others with a conspiracy to distribute "50 grams or more of cocaine base. . . and

a quantity of heroin."  Indictment, June 24, 2009 (Doc. 1).

  
**Conclusion**

For the reasons explained above, the Court **DENIES** the Motion of Defendant Jason Belcher

for New Trial (Doc. 362).  The Court **DIRECTS** the Clerk to send a copy of this written Opinion

and Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and

the U.S. Marshals' Service.


ENTER:    June 14, 2010


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE